UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LANITA DOTSON,

          Plaintiff,

v.                            Case No. 20-CV-1767

JAMES FAULKNER, *et al.*,

          Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

LaNita Dotson, who is incarcerated and represented by counsel, brings this lawsuit under 42 U.S.C. § 1983. Dotson was allowed to proceed on an Eighth Amendment claim and a state law claim against James Faulkner for sexual assault. She was also allowed to proceed on a claim under the theory of supervisor liability against Sarah Cooper, Kalen Ruck, and Amy Finke for the sexual assault that occurred under their supervision. Additionally, she was allowed to proceed on an Eighth Amendment deliberate indifference claim against Cooper, Ruck, and Julie Ustruck because they allegedly denied her psychological services or other resources to address the mental and emotional trauma from the sexual assault. Finally, she was allowed to proceed on a First Amendment retaliation claim against Cooper, Finke, and Ruck for arranging a transfer to a higher-security facility and preventing her from pursuing criminal charges.

Cooper, Ruck, Finke, and Ustruck (the State Defendants) have moved for partial summary judgment on the grounds that Dotson failed to exhaust her administrative

remedies. (ECF No. 27.) Specifically, they move for summary judgment on the Eighth Amendment deliberate indifference to mental health needs claims against Copper, Ruck, and Ustruck, and the First Amendment retaliation claims against Cooper, Finke, and Ruck. The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 23.) For the reasons stated below, the State Defendants' motion for partial summary judgment on exhaustion grounds is granted.

## FACTS

*Underlying Allegations*

Dotson alleges that Faulkner sexually assaulted her three times in June 2019 in a spot within Ellsworth Correctional Facility where the surveillance cameras were either not installed or not working. (ECF No. 9, ¶ 49.) As a result, Dotson suffered severe mental distress and emotional trauma. (*Id.*, ¶¶ 60, 65.)

Dotson further alleges that Finke failed to conduct the required supervisory rounds and knew that sexual assaults were occurring in the spot with inoperable cameras but did nothing to prevent the sexual assaults. (*Id.*, ¶¶ 33-34, 43-45.) Also, Cooper, in her capacity as warden, and Ruck, in his capacity as deputy warden, knew about the regularly-occurring sexual abuse in the blind surveillance spots but did nothing to prevent them. (*Id.*, ¶ 58.) Cooper and Ruck were also aware that Faulkner had sexually assaulted Dotson but did not take steps to prevent further harm. (*Id.*, ¶¶ 58, 60, 62.) Dotson made repeated requests to Finke, Cooper, and Ruck to report her assaults to law enforcement, but they refused to allow her to do so. (*Id.*, ¶ 112.) Finke also decided to transfer Dotson to Taycheedah Correctional Institution in retaliation for reporting the sexual assaults that occurred under

Finke's supervision. (*Id.*, ¶ 74.) Additionally, Ustruck, Ruck, and Cooper were aware of Dotson's mental state but denied her access to psychological care. (*Id.*, ¶¶ 66, 67, 70, 79.)

*Process for Exhausting Administrative Remedies*

Wisconsin's procedures for inmates exhausting administrative remedies are contained in Wis. Admin. Code Ch. DOC 310 (2018). "The purpose of this chapter is to afford inmates in institutions a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin Code § DOC 310.01(1). The Inmate Complaint Review System is the process an inmate must utilize to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. An inmate must file a complaint regarding the situation she is grieving about within 14 calendar days of the situation occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal the rejected complaint to the appropriate reviewing authority within ten days. Wis. Admin. Code § DOC 310.10(10).

If the complaint examiner accepts the complaint, the complaint examiner makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). An inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE) within 14 days after the date of the reviewing authority's decision. Wis.

Admin. Code § DOC 310.12(1). The CCE then has 45 days to make a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.12(9). The Secretary then has 45 days to make a decision following the receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the secretary within 90 days of the receipt of the appeal in the CCE's office, the inmate may consider her administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

Where an inmate complaint concerns sexual abuse or sexual assault, the Prison Rape Elimination Act (PREA) is implicated. Under Wis. Admin. Code § DOC 310.08, PREA has its own complaint procedure. The "provisions apply to complaints alleging sexual abuse or sexual assault." Wis. Admin. Code § DOC 310.08. There is no time limit by which an inmate must file a complaint concerning sexual abuse or sexual harassment. Wis. Admin. Code § DOC 310.08(1). Nor is an inmate required to informally resolve the issue with the officer she is complaining about. Wis. Admin. Code § DOC 310.08(2). Any complaints filed under Wis. Admin. Code § DOC 310.08 are referred for a PREA investigation. Wis. Admin. Code § DOC 310.08(3). While "[t]ime frames are waived for PREA related complaints, this does not apply to PREA related complaint appeals." Wis. Admin. Code § DOC 310.08(7).

*Dotson's Attempts to Exhaust Her Administrative Remedies*

Dotson filed two inmate complaints related to the events of this case. Her first complaint, TCI-2019-12870, was received by the ICE on July 22, 2019. (ECF No. 30-2 at 8.) Dotson stated that after the sexual assault, she asked (non-defendant) Captain Trilling if she could call the ASTOP hotline because she was having flashbacks. (*Id.*) Because it was 10:30 p.m., Dotson knew that no psychological services staff would be available, so she requested

4

access to the hotline. (*Id.*) Trilling refused to allow Dotson to call ASTOP because of a staffing shortage, and Dotson "was sent back to my cell in tears because I was refused counselling." (*Id.*)

The ICE recommended dismissal of the complaint "because the allegations raised in this complaint have already been brought to the attention of supervisory staff and are already under review, [so] there is no need to conduct any further investigation with the ICRS." (*Id.* at 2.) The reviewing authority accepted the ICE's recommendation and dismissed the complaint on August 31, 2019. (*Id.* at 4.) The reviewing authority's dismissal of the complaint also stated that "[a] complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405." (*Id.*)

Dotson filed a second inmate complaint, TCI-2019-13345, which was received by ICE on July 29, 2019. (ECF No. 30-3.) In her complaint, she stated that she was sexually assault in June 2019 and demanded that surveillance cameras be installed in the area where the assaults occurred. (*Id.*) An addendum to this complaint was received by ICE on August 5, 2019, wherein Dotson requested $7 Million for the violation of her constitutional rights. (ECF No. 36-5.) While she mentions the Eighth and Fourteenth Amendments, she does not further elaborate on how her rights were violated. (*Id.*) The ICE recommended dismissal of the complaint "[b]ecause the allegations raised in this complaint have already been brought to the attention of supervisory staff and are already under review, [so] there is no need to conduct a simultaneous investigation within the ICRS." (ECF No. 30-3 at 2.) On August 31, 2019, the reviewing authority accepted the ICE's recommendation and dismissed the complaint. (*Id.* at 4.) The reviewing authority's dismissal of the complaint also stated that

5

"[a] complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405." (*Id.*)

It is undisputed that these are the only two relevant complaints Dotson filed. (ECF No. 39, ¶¶ 9-11.) Dotson asserts that until she arrived at Taycheedah, she was unable to file any inmate complaints. On July 1, 2019, shortly after the third assault, Dotson was transferred to the Milwaukee Women's Correctional Center (MMWC) and remained there for approximately 20 days. (ECF No. 35, ¶ 5.)Dotson states that while she was incarcerated at MWCC, she was unable to file an inmate complaint because "[t]he staff at MWCC said they had no knowledge of how Plaintiff should file an Inmate Complaint regarding the events complained of at Ellsworth." (*Id.*, ¶ 6.) Dotson was then transferred to Taycheedah on July 20, 2019, and filed inmate complaint TCI-2019-12870 that same day, which was then received by ICE two days later. (*Id.*, ¶ 9; ECF No. 30-2 at 8.)

The defendants assert that even if MWCC staff did not know how Dotson could complain regarding events at Ellsworth, she received an inmate handbook and had access to the relevant policies containing the complaint process in the law library. (ECF No. 39, ¶ 6.) The defendants also assert that Dotson failed to appeal the two complaints she did file. (ECF No. 29, ¶¶ 5, 7.) Dotson asserts that she was informed that her complaint was redundant to the outside investigations by the Racine County Sheriff's Department and the PREA task force, so there was no need to appeal because the ICRS did not have the authority to investigate the complaints. (ECF No. 35, ¶¶ 5-7.)

6

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

ANALYSIS

The State Defendants move for partial summary judgment on the grounds that Dotson failed to exhaust her administrative remedies. Specifically, they move for summary judgment on the Eighth Amendment deliberate indifference to mental health needs claims against Copper, Ruck, and Ustruck, and the First Amendment retaliation claims against Cooper, Finke, and Ruck. Dotson has responded in opposition.

*Applicable Law*

Because Dotson was incarcerated at the relevant time, the Prison Litigation Reform Act (PLRA) applies to her case. The PLRA states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a

8

prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). An inmate can show that a grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Id.* (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)).

*Application to this case*

It is undisputed that Dotson did not file inmate complaints specifically relating to Ustruck's, Cooper's, and Ruck's failure to provide psychological services, Finke's motivation for transferring Dotson to Taycheedah, and Cooper's and Ruck's efforts to prevent Dotson from filing a criminal complaint. Neither of the two inmate complaints offered as evidence mention these issues. TCI-2019-12870 addresses a denial of access to mental health services, but it concerns a specific incident. In that inmate complaint, Dotson complained that non-defendant Captain Trilling denied her access to the ASTOP hotline on a specific date. It does not mention any role that Ustruck, Cooper, or Ruck played, nor does it mention a pattern or practice of being denied mental health resources. Thus, TCI-2019-12870 does not address the claims against Ustruck, Cooper, or Ruck. The other inmate complaint Dotson filed, TCI-2019-13345, concerns a request to fix the cameras at Ellsworth. Neither of these complaints "alert[] the prison to the nature of the wrong for which redress

9

is sought," which is the purpose of the exhaustion requirement—to put the prison on notice of potential claims. *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002).

Even if these inmate complaints had contained proper notice of claims, Dotson did not finish the administrative process. When the complaints were dismissed, the dismissal decision contained a notice that any inmate who was dissatisfied with the outcome had 14 days to appeal the decision. It is undisputed that Dotson did not appeal the dismissal of either complaint. Dotson contends that because the complaint was dismissed as redundant to the PREA investigation, there was no need to appeal the dismissal. But the dismissal decision states the opposite, and there is nothing in the Wisconsin Administrative Code suggesting that a PREA investigation excuses the requirement to fully follow the appeals process. In fact, Wis. Admin. Code § DOC 310.08(7) suggests that the appeals process should be followed.

Dotson also argues that the administrative process was foreclosed to her in two ways. First, that she was unable to file any grievances until she got to Taycheedah. Second, she was informed during the review of the two inmate complaints she filed that the PREA investigation trumped any ICRS investigation, so filing a complaint under the ICRS system was redundant and unnecessary. Regarding the fact that she was unable to file grievances until she got to Taycheedah, Dotson asserts that staff at MWCC told her they were unaware of how to file a grievance for events that happened at Ellsworth. This is not the same as a prison official refusing to mail a grievance or an inmate being physically incapacitated to the point where she is unable to file grievance. In such instances where "the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his administrative remedies)," the Seventh Circuit Court of Appeals has found that good cause

10

exists to excuse the exhaustion of administrative remedies. *Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016) (internal citations omitted). But staff being unable to answer questions about how to file a grievance does not render the process unavailable. As the defendants point out, Dotson could have consulted her inmate handbook or reviewed the policies in the law library and filed a grievance under those guidelines.

Dotson also could have filed grievances related to the denial of psychological services and retaliation once she got to Taycheedah. Dotson implies she did not do so because the other grievances she filed at Taycheedah were dismissed because they were redundant to the PREA investigation. Having other complaints dismissed as redundant to the PREA investigation does not excuse Dotson from the requirement to grieve any other additional potential constitutional violations she felt she sustained. The court considered this issue in *Poventud v. Saldaris*, Case No. 18-CV-532, 2020 WL 1046095 (E.D. Wis. Mar. 4, 2020). In *Poventud*, while the plaintiff filed a grievance under the PREA procedure for sexual assault, he did not file a grievance against the defendant psychologist for lack of psychological care under the ICRS because he believed the PREA investigation would cover his claim against the psychologist. *Id.* at *2. The court determined that while PREA modifies the process for grievance claims related to sexual abuse and sexual harassment, "it does not alter the inmate complaint grievance process for other grievances. Poventud's claim against Mink is based on her alleged failure to provide him with psychological care. Though he needed that care because he experienced sexual assault, his grievance was not about sexual assault. It was about lack of psychological care." *Id.* at *3. As such, the plaintiff was required to use the ICRS to exhaust his administrative remedies as it related to the lack of adequate psychological care.

11

Similarly, Dotson cannot claim she exhausted her deliberate indifference claims for lack of psychological care or her First Amendment retaliation claims under the larger umbrella of her PREA investigation. Separate constitutional violations that may have been related to her sexual assault were required to be brought under the ICRS. The fact that other inmate complaints were dismissed because they were redundant does not excuse Dotson from attempting to grieve the additional constitutional claims just because she thinks they would have been rejected. *See Perez v. Wisconsin Dept. of Corr.* 182 F.3d 532, 536–37 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try.").

Because Dotson did not file any inmate complaints related to the denial of psychological services or the retaliation claims, and because Dotson did not establish that the grievance process was unavailable, the court grants the defendants' motion for partial summary judgment.

## CONCLUSION

Because no genuine issue of material fact exists that Dotson failed to exhaust her administrative remedies, the Eighth Amendment deliberate indifference claim for failing to provide psychological services against Cooper, Ruck, and Ustruck is dismissed. Also, the retaliation claim against Finke for sending Dotson to Taycheedah is dismissed, and the retaliation claim against Finke, Cooper, and Ruck for not allowing Dotson to report the sexual assault to law enforcement is dismissed. These claims are dismissed without prejudice. *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020) ("A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully

exhausting his administrative remedies."). Because no additional claims remain against Ustruck, she is also dismissed.

The Eighth Amendment claim and the state law claim against Faulkner survive. As does the supervisor liability claim against Cooper, Ruck, and Finke. The court will set a scheduling conference at a later date to discuss next steps.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that State Defendants' motion for partial summary judgment (ECF No. 27) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Eighth Amendment deliberate indifference to mental health needs claim and the First Amendment retaliation claims are **DISMISSED without prejudice**. Additionally, defendant Julie Ustruck is **DISMISSED without prejudice.**

Dated at Milwaukee, Wisconsin this 2nd day of June, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge