UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LANITA DOTSON,**

                  **Plaintiff,**

**v.**                                                    Case No. 20-CV-1767

**JAMES FAULKNER,** *et al.***,**

                  **Defendants.**

## DECISION AND ORDER ON STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Lanita Dotson, while an inmate at Ellsworth Correctional Institution, was sexually assaulted by correctional officer James Faulkner[1]. She brings this lawsuit under 42 U.S.C. §1983. She alleges an Eighth Amendment deliberate indifference claim under a theory of supervisor liability against the warden, Sarah Cooper, the deputy warden, Kalen Ruck, and a captain Amy Finke (State Defendants) for her sexual assault by Faulkner. The State Defendants move for summary judgment. (ECF No. 70). For the reasons stated below, the State Defendants' motion for summary judgment is granted.

### PRELIMINARY MATTERS

      The State Defendants argue that Dotson failed to follow the applicable Civil Local Rules when filing her response to their motion for summary judgment. (ECF No. 91 at 2.)

---

[1] Dotson sues Faulkner under 42 U.S. C. §1983. Faulkner, who was convicted of sexually assaulting Dotson, has not made an appearance in this case and the Clerk of Court made an entry of default on July 25, 2022. Dotson has not filed a motion for default judgment.

Specifically, Dotson did not follow Civil L.R. 56(b)(2)(B)(i) and cite to any reference in the record when disputing the State Defendants' proposed findings of fact. (*Id.* at 2-3.) She also did not follow Civil L.R. 56(b)(2)(B)(ii) and prepared "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting material relied upon to support the facts described in that paragraph." (*Id.* at 3) Instead, Dotson merely cited to portions of the State Defendants' depositions and appended them to her response brief. (*See* ECF No. 86-2 through 86-4.) Also, the State Defendants note that Dotson did not include the errata sheet with Ruck's deposition and mischaracterized Ruck's deposition testimony. (ECF No. 91 at 8.) The State Defendants contend that the court should disregard the facts offered by Dotson in her response brief that fail to comply with the local rules. They further assert the court should deem the State Defendants' uncontroverted statements of material fact as admitted.

The court notes that Dotson is not representing herself, but is, in fact, represented by counsel. "[A] district court is entitled to demand strict compliance with [the local] rules for responding to a motion for summary judgment." *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607-08 (7th Cir. 2008). The court acknowledges Dotson's oversight in her response materials but does not need to formally disregard her proffered evidence because, as explained below, even with the improperly introduced evidence, the court still grants summary judgment in favor of the State Defendants. In this instance, the lack of the State Defendants' opportunity to meaningfully respond to Doston's proposed facts and disputed facts does not prejudice them. However, Dotson's attorneys should be careful to follow the local rules in the future.

# FACTS

At all times relevant, Dotson was confined at Robert Ellsworth Correctional Institution (Ellsworth). (ECF No. 72, ¶ 2.) Sarah Cooper was the Warden for the Wisconsin Women's Correctional System (WWCS), which included Ellsworth. (*Id.*, ¶¶ 1, 3.) As part of her job duties, Cooper "was responsible for enforcing the rules of the department for the administration of WWCS, overseeing programming, security, budget as well as certain aspects of hiring and the discipline of staff and inmates." (*Id.*, ¶ 4.) Kalen Ruck was the Deputy Warden of WWCS, and her duties "included assisting the Warden under her general direction, enforcing the rules of the department for the administration for the WWCS, administrative tasks relating to the facilities, security, and staffing as well as certain aspects of hiring and the discipline of staff and [inmates]." (*Id.*, ¶¶ 5-6.) Amy Finke was a Captain (Supervising Officer 2) at Ellsworth, and her role was administrative. (*Id.*, ¶¶ 7-8.) She was responsible for "coordinating the staff schedule, answering legal requests, maintaining uniforms and inventory, and reviewing conduct reports and incident reports if they pertained to her or her area (such as keys and locks, uniforms, inventory, etc." (*Id.*, ¶ 8.) Defendant James Faulkner was a correctional officer at Ellsworth. (*Id.*, ¶ 14.)

Dotson alleges that on the night of June 10, 2019, she was working with a paint crew in the administrative hallway area at Ellsworth. (ECF No. 72, ¶ 27.) During that time, Faulkner had her perform oral sex on him "for an estimated one or two minutes." (*Id.*) There were no witnesses to the encounter, and it is undisputed that Dotson did not call for help or otherwise tell anyone what happened. (ECF No. 86-1, ¶¶ 28-29.) The next day, June 11, 2019, Dotson was working paint crew in the women's bathroom, and Faulkner choked her and told her not to tell anyone what happened. (*Id.*, ¶ 30.) Dotson did not have contact with Faulkner

3

again until June 22, 2019, when he forced her to perform oral sex on him in the dayroom of her housing unit. (*Id.*, ¶ 32.) That was the last interaction Dotson had with Faulkner. (*Id.*, ¶ 33.)

It is undisputed that Dotson did not tell anyone who was employed by WWCS, Ellsworth, or the Wisconsin Department of Corrections (DOC) what had happened. (ECF No. 86-1, ¶ 37.) On June 28, 2019, Dotson did tell an attorney who was representing her about the assaults. (*Id.*, ¶ 35.) The attorney called the Racine County Sherriff's Department and that same day they went to Ellsworth to investigate Dotson's allegations. (*Id.*, ¶ 36.)

It is undisputed that prior to the Racine County Sherriff's Department's investigation, the State Defendants were not informed about Faulkner's assault. (ECF No. 86-1 at, ¶¶ 38, 41, 43.) Cooper states that she had no personal knowledge of the incident until the investigation began. (ECF No. 72, ¶ 38.) Cooper also did not stop Dotson from contacting law enforcement, though Dotson claims that there was "an atmosphere of fear and retaliation" at Ellsworth that had "a serious chilling effect on reporting abuse conducted by Defendants' employees." (ECF No. 86-1, ¶ 40.) Ruck and Finke also state that they were personally unaware of Faulkner's assault before June 28, and that they never prevented Dotson from reporting the assault to law enforcement. (ECF No. 72, ¶¶ 41-44.) Dotson asserts that the State Defendants could have learned about the incident through "other means" but offers no evidence that they in fact did so. (ECF No. 86-1, ¶¶ 38-44.) Dotson also does not dispute that she never contacted the State Defendants to tell them about the incident. (*Id.*, ¶¶ 45-47.) Additionally, it is undisputed that Finke did not work on June 10 or June 22, 2019, and she worked first shift June 11, 2019, and left before Faulkner had choked Dotson. (*Id.*, ¶¶ 59-61.) She also was not responsible for assigning Faulkner to supervise the paint crew and

4

was not his direct supervisor. (ECF No. 72, ¶¶ 63-65.) Directly interacting with Faulkner was not part of either Cooper's or Ruck's job duties. (*Id.*, ¶ 66.)

Once the State Defendants learned about the incident, the Prison Rape Elimination Act (PREA) office was contacted. (ECF No. 72, ¶ 52.) Faulkner was immediately placed on administrative leave, was escorted off the premises, and was arrested. (*Id.*, ¶¶ 53-54.) On July 1, 2019, the PREA office began its investigation, but then delayed the investigation at the request of the Racine County Sherriff's Department because their investigation was still ongoing. (*Id.*, ¶¶ 55-56.) The State Defendants asserted that the DOC and Ellsworth fully cooperated in both investigations. (*Id.*, ¶ 58.)

Dotson does not dispute that State Defendants were not told about the incident until the Sherriff's Department was called, but she asserts that the State Defendants knew about conditions that resulted in her assaults. She states that the State Defendants knew that "Faulkner was an impending danger to the female inmates" of Ellsworth, because their deposition testimony shows they were aware that Faulkner had been "written up" for alleged sexual misconduct with a prisoner a month prior to his assaults on Dotson. (ECF No. 86 at 7-8.)[2] The State Defendants note that Dotson did not provide the exhibits along with the deposition testimony in their response materials, which included the incident report that was the subject of the deposition testimony. (ECF No. 91 at 6.) In their reply materials, the State Defendants provided that exhibit, which clearly shows that Faulkner wrote an incident report disclosing that another prisoner had told him that a different prisoner, "Felicia S—", told her that Faulkner had had a relationship with her prior to her incarceration. (ECF No. 90-1.)

---

[2] Because Dotson did not file a separate proposed findings of facts, the court is aware that the citations to Dotson's response materials are imprecise and may cause confusion.

was not his direct supervisor. (ECF No. 72, ¶¶ 63-65.) Directly interacting with Faulkner was not part of either Cooper's or Ruck's job duties. (*Id.*, ¶ 66.)

Once the State Defendants learned about the incident, the Prison Rape Elimination Act (PREA) office was contacted. (ECF No. 72, ¶ 52.) Faulkner was immediately placed on administrative leave, was escorted off the premises, and was arrested. (*Id.*, ¶¶ 53-54.) On July 1, 2019, the PREA office began its investigation, but then delayed the investigation at the request of the Racine County Sherriff's Department because their investigation was still ongoing. (*Id.*, ¶¶ 55-56.) The State Defendants asserted that the DOC and Ellsworth fully cooperated in both investigations. (*Id.*, ¶ 58.)

Dotson does not dispute that State Defendants were not told about the incident until the Sherriff's Department was called, but she asserts that the State Defendants knew about conditions that resulted in her assaults. She states that the State Defendants knew that "Faulkner was an impending danger to the female inmates" of Ellsworth, because their deposition testimony shows they were aware that Faulkner had been "written up" for alleged sexual misconduct with a prisoner a month prior to his assaults on Dotson. (ECF No. 86 at 7-8.)[2] The State Defendants note that Dotson did not provide the exhibits along with the deposition testimony in their response materials, which included the incident report that was the subject of the deposition testimony. (ECF No. 91 at 6.) In their reply materials, the State Defendants provided that exhibit, which clearly shows that Faulkner wrote an incident report disclosing that another prisoner had told him that a different prisoner, "Felicia S—", told her that Faulkner had had a relationship with her prior to her incarceration. (ECF No. 90-1.)

---

[2] Because Dotson did not file a separate proposed findings of facts, the court is aware that the citations to Dotson's response materials are imprecise and may cause confusion.

Dotson also contends that the State Defendants and several other Ellsworth employees knew "that the security camera system in place had weaknesses that could be exploited." (ECF No. 86 at 7.) The State Defendants note that the administrative hallway where one incident took place does not have security cameras because prisoners are not generally allowed in that area, as it houses offices for administrative staff. (ECF No. 72, ¶ 67.) Additionally, the bathroom does not have security cameras for privacy reasons. (*Id.*, ¶ 76.) The dayroom in the housing unit was physically surveilled by correctional officers in addition to cameras. (*Id.*, ¶ 68.) The State Defendants note that surveillance cameras are just one piece of the security measures that Ellsworth employs to ensure the safety and security of its staff and prisoners. (*Id.*, ¶ 70.) The cameras are meant to be a deterrent, but they are not a perfect means of preventing incidents, and, in fact, are most useful to gather evidence of incidents after they have occurred. (*Id.*, ¶ 73.) The State Defendants also assert that none of them had the authority to decide when and where to place cameras. (*Id.*, ¶¶ 74-78.) At most, Cooper, as Warden, could place a budget request asking for more cameras, but her requests were not always granted. (*Id.*, ¶ 74.)

Dotson further contends that the State Defendants, specifically Finke, was aware that the administrative hallway posed a risk to prisoners because Finke was aware that a sexual assault had previously occurred in that area. (ECF No. 86 at 8.) Finke asserts, and it is undisputed, that the sexual assault occurred 20 years prior to Dotson's assault, when the area was used as a recreational area. (ECF No. 72, ¶ 84.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Dotson claims that the State Defendants violated her Eighth Amendment rights when they allowed Faulkner to sexually assault her under their supervision. "Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge from harm." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). To state such an Eighth Amendment claim, a plaintiff must allege "the official knows of and disregards and excessive risk of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Sexual assault constitutes a substantial risk of serious harm. *See Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).

Additionally, when a plaintiff is alleging constitutional violations under a theory of supervisor liability, a supervisor can be held liable for their employee's constitutional violations only where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* In the case of sexual assault, supervisors can be liable where they "effectively condone[] the attack by allowing it to happen." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Additionally, a supervisor must have acted purposely, knowingly, or recklessly; merely being negligent does not establish a constitutional violation. *Kemp v. Fulton Cty.*, 27 F. 4th 491, 498 (7th Cir. 2022).

Here, no reasonable jury could conclude that the State Defendants had the requisite knowledge to be held liable. It is undisputed that none of the State Defendants knew about the assaults until after the criminal investigation began. Dotson postulates that the State

Defendants could have been made aware of the assaults by "other means." (ECF No. 86-1, ¶¶ 38-44.)t such assertion is insufficient as Dotson does not provide any evidence of what those other means are. While a non-movant "is entitled . . . to all reasonable inference in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Thus, Dotson fails to establish that the State Defendants knew the sexual assault was happening and turned a blind eye to it or otherwise condoned it.

Dotson attempts to argue that the State Defendants knew that Ellsworth posed an unreasonable risk of sexual assault to its prisoners, relying on several cases that invoke a theory of liability under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). (ECF No. 86 at 11). *Monell* allows a plaintiff to sue a municipality where a plaintiff can establish that a pattern, practice, or custom of a municipal entity was unconstitutional. It may be that Dotson is confusing supervisor liability with *Monell* liability, nonetheless, Dotson was not allowed to proceed on a *Monell* claim against the State of Wisconsin, and she is limited to the scope of the screening order. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013).

Second, Dotson does not establish evidence that there was even a custom, policy, or practice that resulted in sexual assaults of prisoners at Ellsworth. The evidence of that several Ellsworth employees, including the State Defendants knew that the cameras were not a perfect deterrent is insufficient. At most, if there were broken cameras or a lack of cameras where they should be, it would amount to negligence. Dotson also did not provide evidence that the State Defendants knew that the lack of cameras was causing sexual assaults of prisoners. At most, Dotson points to one incident from 20 years ago in the same area where

9

she was assaulted, but that area was used in a completely different manner 20 years ago. One aged incident does not establish a systemic issue of sexual assaults that the State Defendants knew about.

Similarly, the incident report, which arguably Dotson mischaracterized in her response materials, does not establish that the State Defendants knew that Faulkner had a history of sexual encounters with Ellsworth prisoners. At most, it shows that Faulkner had a consensual relationship with one of the prisoners prior to her incarceration that that he had failed to previously disclosed. Dotson presents no other evidence that Faulkner had a history of sexual assault of prisoners that the State Defendants were ignoring.

As such, Dotson fails to establish that the State Defendants knew about and turned a blind eye or otherwise condoned Faulkner's actions. Summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons, the State Defendants' motion for summary judgment is granted. The State Defendants also argued that they were entitled to qualified immunity, but because the court granted summary judgment in their favor on the merits, it does not need to address the qualified immunity arguments. Because there is still a claim against Faulkner, the court will set a status conference to discuss next steps.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the State Defendants' motion for summary judgment (ECF No. 70) is **GRANTED.**

**IT IS FURTHER ORDERDED** that Sarah Cooper, Kalen Ruck, and Amy Finke are **DISMISSED.** The court will set a status conference to discuss next steps.

Dated at Milwaukee, Wisconsin this 24th day of October, 2023.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge